## Beaver Valley Water Co., Appellant, *v.* The Public Service Commission.

*Water companies—Rates—Valuation of property—Public Service Commission.*

On an appeal from order of the Public Service Commission fixing a schedule of rates, etc., the Superior Court will not disturb the findings of the commission when there is sufficient evidence to support such findings, even if the conclusion of the court differ from the conclusion of the commission.

*Public Service Commission—Valuation for rate-making purposes —Going concern value.*

Where the commission has found a value for rate-making purposes such value will not be disturbed because it fails to specifically make an allowance for "going concern value."

Where other items of value have been ignored by the Public Service Commission, in the exercise of its sound discretion as a rate-making body, the Superior Court will not go behind such findings or substitute its judgment for that of the commission: Ben Avon Boro. v. Ohio Valley Water Co., 260 Pa. 292, followed.

Argued Dec. 6, 1918. Appeal, No. 88, April T., 1917, by the Beaver Valley Water Company, from order of the

44 BEAVER VAL. W. CO., Appellant, v. PUB. SER. COM.

Statement of Facts—Assignment of Errors. [71 Pa. Superior Ct.

Public Service Commission of Pennsylvania, Complaints Nos. 187-188, in case of Solon G. Thayer et al. v. Beaver Valley Water Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Complaints against Beaver Valley Water Company on account of schedule of increased rates effective April 1, 1914.

The charges in said schedule were alleged to be unjust and unreasonable. After hearing, Ainey, Chairman, filed the report of the commission, fixing a valuation and determining the rate thereon.

*Errors assigned* were various findings of fact by the commission and (79) in making the following order:

"This matter being before the Public Service Commission of the Commonwealth of Pennsylvania upon complaints and answers on file, and having been duly heard and submitted by the parties and full investigation of the matters and things involved having been had, and the commission having on the date hereof made and filed of record a report containing its findings of fact and conclusions thereon, wherein it is determined that a fair value for rate-making purposes of the property of the respondent as of February 1, 1915, was nine hundred eighty-five thousand dollars ($985,000), and the respondent is entitled to an annual return thereon of one hundred thirty-five thousand nine hundred and fifty dollars ($135,950), which said report is hereby approved and made a part hereof:

"Now, to wit, July 15, 1916, the Beaver Valley Water Company is ordered to design a schedule of charges covering all the service rendered by it that will return an annual gross revenue of one hundred thirty-five thousand nine hundred and fifty dollars ($135,950) ; the said schedule to be in substantial accord with the divisions

thereof suggested in the above-mentioned report, and the classification of service and rates contained therein to be such as to carry out the principles laid down in said report.

"And it is further ordered, that the said respondent shall submit the said schedule together with the necessary substantiating data to this commission for its approval within sixty days of the date of the service of this order."

*George E. Alter,* of *McKee, Alter & Mitchell,* for appellant.—An allowance should be made for overhead cost during construction: Oshkosh Water Works Plant, 12 W. R. C. Rep. 602; Montana W. & S. R. R. Co. v. R. R. Com., 198 Fed. 991; Bonbright v. Corp. Com. of Arizona, 210 Fed. 44; Nat. Tel. Co., Ltd., v. His Majesty's Postmaster Gen., 16 A. T. & T. Com. L., 491; Berlin Electric Light Co., 3 N. H. P. S. C. 174; Application Lier, Tel. & Tel. Co., 19 A. T. & T. Co., Com. L., 134; Queensboro Gas & Elec. Co., 2 P. S. C., 1st D. (N. Y.) 544; Baltz v. Brooklyn Bor. & Kings Co. Lighting Co., 2 P. S. C., 1st Dist. (N. Y.); Mayhew v. Kings County Lighting Co., 2 P. S. C., 1st Dist. (N. Y.) 659.

In connection with allowance for preliminary and organization cost: see In re Queensboro Gas & Electric Co., 2 P. S. C., 1st D. (N. Y.) 544; Public Service Gas Co. v. Board of Public Utility Commissioners (N. J.), 87 Atl. 651; In re Central California Gas Company, 2 Cal. R. R. Pom. Reports 116; In re Northern Michigan Power Company, 19 At. & T. Co. Com. L. 244; In re Rochester, Corning & Elmira Construction Co., L. P. S. C., 2d D. (N. Y.) 166.

Allowance should have been made for a going concern value: Commercial Club v. Citizens Gas and Fuel Company, Vol. I, New Jersey Public Utilities Commission Reports, at page 475; Turtle Creek Borough v. Pennsylvania Water Co., 243 Pa. 401; Des Moines Gas Company v. City of Des Moines, 238 U. S. 165; Kings

County Lighting Co. v. Willcox, 210 N. Y. 479; Bonbright v. Geary, 210 Fed. Rep. 44, 54, 56; Lima v. Lima Telephone & Telegraph Co., Public Utilities Reports, 1916 E.; Public Service Gas Company v. Board of Public Utility Commissioner et al., 84 N. J. L. 463, 87 Atlantic 651; Hanover Borough v. Hanover Sewer Company, 251 Pa., at page 100; Des Moines Gas Co. v. Des Moines, 238 U. S. 153; Knoxville v. Knoxville Water Co., 212 U. S. 1.

The water rights were capable of valuation and should have been included in the assets of the company: Murray v. Public Utilities Commission, — Idaho, P. — (Public Utilities Reports, 1915, Vol. F, page 436.

*J. Sharp Wilson* and *Lawrence M. Sebring,* for appellees.—Going concern value does not have to be specifically itemized: Appleton Water Works Company v. Railroad Commission, 154 Wis. 121, 142 N. W. 476; Turtle Creek Borough v. Pennsylvania Water Company, 243 Pa. 401; Kings County Light Company v. Wilcox, 210 N. Y. 479.

*Berne H. Evans,* for the Public Service Commission.

OPINION BY KEPHART, J., January 3, 1919:

The Beaver Valley Water Company was incorporated in 1902 to supply water in a district between Freedom and Baden on the northeasterly side of the Ohio river. Shortly after its organization it took over various water companies supplying seven municipalities covering a stretch of territory approximately eleven miles in length. The company filed two schedules increasing the water rates through this territory, one in 1912 and the second in 1914. Complaints were filed to both of these schedules which were disposed of in this proceeding. The company at that hearing asked that a schedule be adopted which would yield a fair return on a valuation of $2,540,000. This value was arrived at from an ap-

praisement by the company of its property for rate purposes. It had a bonded indebtedness which sold at par for $1,038,000, an indebtedness of the underlying companies of $187,871.34 and a stock issue of approximately $1,000,000. The commission, after hearing the evidence, fixed a value of $985,000. The value so found by the commission represented the "bare bones" of the plant, stripped of all those items which are sometimes referred to as intangible property, which, with the physical property, make up present value. The commission fixed this at what it would cost at this time to reproduce the physical property of this plant—pipe lines, right-of-way, reservoirs, real estate, etc.—less depreciation. It did not allow for going concern value, or the cost of developing the business of the plant; nor for unpaid or deferred dividends, as suggested in a Supreme Court opinion; nor the property that was not presently useful; nor, it is claimed, property that was in use but was acquired by the company in the nature of a gift; nor did it allow for duplicate lines where the company stated these duplicate lines were necessary to supply present demand. The commission fixed the value as though the plant had been constructed at the present time, less depreciation, with a capacity of each part sufficient to take care of present day demand without regard to whether the plant had one customer or ten thousand customers. The appellant complains that the commission erred in not allowing nineteen separate items of value relating to either the physical or intangible property of the company. They are as follows:

A. 8,470 feet of 12-inch pipe from Freedom to Conway, and rock excavation, ........$ 15,772.00
B. Duplicate pipe in Beaver Falls Distributing System, ...................... 39,330.00
C. Valves, etc., in Beaver Falls Distributing System used with said duplicate pipe,. 1,006.40
D. The People's Warehouse, .............. 5,000.00
E. The New Brighton Reservoir, ......... 3,000.00

F. The Upper Freedom Reservoir, ......... $4,000.00

G. The Freedom Pumping Station, ........ 13,500.00

H. Paving where mains were laid before
pavements, ...................·...... 34,157.45

I. Service lines installed by consumers, .... 60,861.50

J. Lands excluded from valuation, ........ 64,187.50

K. Water Power Value at Hartman dam, .. 84,800.00

L. Water Power Value at New Brighton
dam, ............................. 88,200.00

M. Bed of Beaver River, ................. 100,000.00

N. Proposed additions to plant, .........., 72,607.00

O. Going concern value, .................. 250,000.00

P. Cost preliminary to construction, ...... 30,000.00

Q. Promotion service, .................⎫

R. Franchise costs, ....................⎬120,000.00

S. Financing and brokers' fees. .........⎭

In Ben Avon Boro. v. Ohio Valley Water Co., 68 Pa.
Superior Ct. 561; 260 Pa. 289, we considered the legal
propositions as they bore upon the several questions pre-
sented by this appeal. In that case the court, following
the direction of the Public Service Act, considered Sec-
tion 22 of Article VI, of the Public Service Act that re-
quired this court upon the record to determine whether
the order appealed from was reasonable and in conform-
ity with law. By section 23 of the same act, the notes of
testimony were made part of the record of the case. If,
from this record the order did not appeal to the court as
being a reasonable order, either from failure to consider
items of value properly proven, or from a manifest disre-
gard of evidence, or from reliance upon incompetent evi-
dence, we were required to proceed as the law directed.
The act plainly directed the evidence be reviewed, al-
though in no event were we required to act as second ad-
ministrative commission. In the Ohio Valley case we en-
deavored to point out where the commission had failed to
allow items of value clearly proven and where there was
little, and in some instances no testimony, to sustain its
action, and where it had erred in its legal conclusion. In

so directing, this court refrained as far as it was able from discussing or passing on questions where the evidence was fairly in dispute and the facts were found. The commission neglected to give the values claimed, not because they were not there, but because it, as a commission, did not believe them proper items of rate-making value or claimed that some were insufficiently proven. On review by the Supreme Court, the concluding paragraph of the opinion marks the line for this court's consideration. "Much must be left to the sound discretion of the appraising body, the tribunal appointed by law and informed by experience, for the discharge of these delicate and complex duties. Its report must, of course, justify itself in reason, upon review in the appellate courts." Our conclusions in that case were declared to be a substitution by this court of our judgment for that of the commission's. In effect, matters such as here considered by the commission were directed by the Supreme Court to be treated as discretionary matters within the control of the commission. This court was in error in holding that the legislature did not intend the commission's authority to be wholly discretionary, but as it was dealing with substantial property rights its duty was fixed and if the commission failed in its duty, the way was open to the courts to enforce it.

We will not discuss at length the testimony taken in the present appeal. For the purpose, however, of illustrating the effect of the final judgment of the Supreme Court: when we made the order in the Ohio Valley case returning to the commission the record with direction to consider items of value that had been omitted, among those items was one of going concern value, the largest item in dispute. This same value is presented in this appeal. We pointed out that while the commission said it would consider going concern value, as a matter of fact it did not allow anything for that value. We pointed to the schedule of reproduction cost, new, less depreciation, made by the commission, as printed

on page 565, 68 Pa. Superior Ct. There are enumerated the several items of this cost, and these items in round figures amounted to $995,000. The commission did not contemplate, nor was it ever contended in that case, that the item of going concern value or cost was divisible, to be attached to each of the separate items of physical property enumerated in that schedule. These items represented what it would actually cost—material, ground, labor, etc.—to reproduce the "bare bones" of the plant. The original cost of the property, part of which it was admitted could not be ascertained, as found by the commission, was $841,000, in round figures, not including sufficient amounts for interest during construction, engineering, general administration and other items; but, as is shown the normal increase in the value from the time of purchase to the present time of this physical property would make the difference between rate-making value and the partial original cost as found by the commission, the records as to part of which were lost. This rate value as fixed by the commission, was in round figures $924,000. There was no place in the commission's findings for going concern value. It was not allowed. The record returned would have required a value for this item, determined by the testimony then before the commission, or from such other testimony it desired to secure. It was stated no claim was made that the stockholders suffered by reason of dividends being unduly deferred while the business was being built up. We do see how deferred dividends could form any basis to fix going concern cost. The earnings of the company may go towards improvements, such as extensions, in which case the stockholders benefit in increased plant account. Whether the stockholders put any or all the money into the concern from their own purses, or use borrowed money, is not the chief concern before the commission, although it may aid on the question of good faith to the public. The commission does not act on the theory that issues of stock are controlling or are evidence to es-

tablish value. In the Ohio Valley case, as the bonds and indebtedness were $200,000 more than the value for rate-making purposes, the stockholders, under the commission's orders, were held to be entitled to nothing. The earnings were barely sufficient to pay the interest on outstanding obligations, without considering a sinking fund to retire bonds as they fell due. What we thought the commission should strive to secure is the present value for rate purposes.

In the present case, any reason which we might give for sustaining the item of going value would not be any more convincing than was given in the Ohio Valley case, and the Supreme Court held our action in that case was a substitution of our judgment for that of the commission's. It may be readily seen how that case controls the present one. There might be this possible difference in the present case. The commission said: "Upon the basis of the reproduction cost new method of ascertaining value for rate-making, the commission finds that the respondent has failed to sustain its claim for going value." There was considerable evidence to establish this value, but the action of the commission in the Ohio Valley case did not differ from its unequivocal action in the present case. It did not allow the value in either case.

Complaint is made that the commission allowed the value of but one of the duplicating lines in Beaver Falls. Neither system alone was sufficient to supply the present demand according to the appellant's testimony. The value of the distributing system not allowed was $39,300. The reason given was that "they clearly would not find any physical counterpart in the conception of this plant reproduced." The commission's reason may be sound as an abstract question, but it must be remembered that these companies were built into boroughs that were at the time thinly settled. A three-inch line was possibly all that would be necessary to supply the inhabitants. As the borough grew the demand grew, but

the introduction of a competing system took away the necessity for enlarging the lines of the first company to handle this increased demand. It is quite true that any company building a line through this borough to-day would put in a main large enough to supply all of the demand, but it is equally true that had a main large enough to supply present-day demand been installed when the plant was first constructed, with a Public Service Commission then acting, a physical value then placed upon this property for rate purposes, under the rulings of this commission, would not allow value for a pipe of that size. It would have been over-development. Whether the lines were competing or not, they now are necessary to the company's use. The appellee says they are not.

We appreciate the difficulties under which the commission labors, but we appreciate, too, the difficulties under which investors in public utility companies labor where confiscation of property is permitted by those who are charged with the duty of protecting the owners. Where there is a conflict of testimony and the commission has found the facts, this court has always held that the action of the commission was final unless it was plainly against the manifest weight of the evidence. But, there is a decided difference between weighing disputed evidence and ascertaining whether the commission has refused to consider competent evidence properly before them. All the other items bear a close relation to the questions raised in the Ohio Valley case with the exception of item "A," the pipe line from Freedom to Conway. We think the commission properly disposed of this question. The appellant had a main which ran to the borough and some railroad yards in the line of its activities. They disposed of their distribution system in the borough and they never owned the distribution system in the railroad company's yards. The only thing that was left of their entire plant as it referred to this section was this main which was occasionally called into

use by the borough and the railroad company. When the appellant sold its distribution system, it should have taken care of a portion of the price of this main as it was properly a value that attached to that distribution system. If they neglected this, it was error in business judgment for which the other consumers should not suffer. The commission properly allowed but a portion of the value which was all that the company could expect under the circumstances. The other item of value was "K," the water power dam, sometimes known as the Eastville dam. The west abutment was constructed by the Pittsburgh & Lake Erie Railroad Co. It was built of heavy masonry, constructed with openings for developing the water power available at the west end of the dam. Such was the testimony of the appellant, and without which it would require an extension of one hundred and twenty feet to reach the western bank of the river. There does not seem to be any question about the ownership of this part of the dam. The value was not allowed by the commission for the reason it was stated that the company had paid nothing for this improvement and should, therefore, not be allowed its value. The record does not seem to be as clear on this proposition as appellant seems to contend for, but if it is as they have argued it, we do not understand why the commission should refuse to give value to the company for the piece of property that they were presented with. Under the rules laid down by the Supreme Court in the Ohio Valley case, any opinion different from the commission would be but a substitution of our judgment. It is a claim that rises no higher than brokerage, interest paid during construction, going concern value, real estate owned by the company, and other items that have heretofore been discussed. We can add nothing to what the Supreme Court has said and what this court has said in a similar case. As the decision of the Supreme Court is binding on this court, we must affirm the order of the commission at the cost of the appellant.