## Kittanning Telephone Company, Appellant, *v.* The Public Service Commission.

*Public Service Commission — Public Service Company Law — Telephone companies—Rates—Increase — Further change within three years—Right to hearing—Refusal on petition and answer.*

Where the Public Service Commission has refused to sanction increased rates established by a telephone company, and has ordered the company to resume its old schedule, and the company finds, after experimenting with the rates, thus reëstablished, that they are not adequate, and will work a confiscation of the property, a hearing to determine whether or not an increase in rates shall be allowed is a matter of right.

It was error for the Public Service Commission to dismiss the application for permission to file a new schedule of rates, upon petition and answer, without a hearing.

Section 1 (f) of article II, of the Public Service Company Law does not provide that no change shall be made in the rates of a public service company for a period of three years after their determination by the commission, but only that no such change shall be made without application to and the approval of the commission.

Argued March 16, 1922.    Appeal, No. 27, March T., 1921, by Kittanning Telephone Company, from order of the Public Service Commission, Application No. 5573, 1921, in the case of Kittanning Telephone Company v. The Public Service Commission of the Commonwealth of Pennsylvania, on appeal, and Borough of Ford City, Borough of Leechburg and J. W. Patterson et al., intervening appellees.    Before ORLADY, P. J., PORTER, HENDERSON, KELLER and LINN, JJ.    Reversed.

Application for permission to file a new schedule for rates.

The facts are stated in the opinion of the Superior Court.

The answer filed was in the nature of a demurrer, raising the question whether the commission had lawful authority to consider the question of rates, within three years of the former decision (77 Pa. Superior Ct. 86). The commission, therefore, took the testimony, subject to a stipulation that it would not be transcribed and filed of record unless the commission should overrule the demurrer.

The order subsequently entered by the commission was: "Now, to wit, January 16, 1922, it is ordered: that the prayer of the petition is refused, and the application is dismissed."

*Error assigned* was the order of the commission.

*Berne H. Evans,* of *Hause, Evans & Baker,* for appellant.—The Public Service Company Law recognizes the right of appellant seeking relief from an order of the commission to go to the commission itself: Kittanning Telephone Co. v. Public Service Commission, 77 Pa. Superior Ct. 86; Coplay Cement Mfg. Co. v. Public Service Commission, 271 Pa. 58.

There is no other way to question a confiscatory order than by presenting the question first to the commission, thus preparing the way for an appeal to the Superior Court: Fogelsville & Trexlertown E. Co. v. Pa. Power & Lt. Co., 271 Pa. 237; Lincoln Gas & El. Co. v. Lincoln, 250 U. S. 256; New Brighton Boro. v. New Brighton Water Co., 247 Pa. 232.

*Clarence O. Morris,* and with him *Floy C. Jones,* for intervening appellees.—The questions now raised were all raised and determined upon the former appeal, and

are now res adjudicata: Peoples Water Co. v. Pittston, 241 Pa. 208; Hartranft v. Ives, 64 Pa. Superior Ct. 338.

*Frank M. Hunter,* Counsel, and with him *John Fox Weiss,* Assistant Counsel, for the Public Service Commission.

OPINION BY KELLER, J., April 17, 1922:

On December 1, 1919, Kittanning Telephone Company filed a new tariff increasing its rates, effective January 1, 1920. Before the effective date complaints were filed against the new schedule. The burden was therefore on the telephone company to prove that the increased rates were just and reasonable: Article V, section 4 of the Public Service Company Law. This it attempted to do by showing that the cost of operation had greatly increased since the summer of 1919, justifying,—it was alleged—the proposed increase of rates. No evidence of the value of the company's property devoted to public service was presented and the commission did not ascertain and determine the fair value of such property, but for the purposes of the case, it assumed, without objection from any quarter, that the book cost of the property was its value for rate-making purposes, and on that basis decided that the new rates were unjust and unreasonable and ordered the company to resume its old schedule as of date of October 1, 1920. In arriving at this conclusion it averaged the revenues and expenses for the three years, 1917, 1918 and 1919,—before the new rates went into effect—and from them determined there was reasonable likelihood that the old rates would be sufficient to allow a fair return on the book cost after providing for a reasonable depreciation. On appeal to this court we affirmed the order of the commission, (77 Pa. Superior Ct. 86), but called attention to the manifest deficiencies of the record. We refused to adopt the figures resulting from four months' operation in 1920, under the new conditions, as decisive of the matter, saying: "We

cannot accept appellant's suggestion that the short experience in 1920, together with its prediction, wholly dissociated from its profitable history to the end of 1919, shows that the new rates are reasonable, or that the former rates are unreasonable"; but as it was clear that owing to the paucity of the record, the determination of the commission must have been to some extent experimental, we said: "If reasonable trial realizes appellant's apprehension of unsuccessful operation at the rates fixed, article II, section 1 (f) of the Public Service Company Law 1913, P. L. 1379, provides a method for relief." pp. 92, 93.

On November 7, 1921, the company filed its petition setting forth, inter alia, that it had made a careful valuation of its property devoted to the public service and that its present fair value was at least $490,000; that its net operating revenues, under the rates fixed by the commission, for the eight months ending August 31, 1921, amounted to only $11,534.90, and on the same basis the net income of the company for the year would not exceed $16,462.51, a return of less than 3½ per cent on the above-stated fair value; that the rates, as fixed by the commission, had proved unjust, unreasonable and confiscatory, and too low to enable it to undertake extensions and betterments necessary to enable it to continue to render reasonably adequate service. It therefore prayed permission from the commission (as provided in article II, section 1 (f), aforesaid) to file and put into effect a new schedule of rates, which would, it was estimated, yield a net return of approximately six per cent on said fair value of its property devoted to public service.

The intervening appellees filed an answer denying the authority of the commission to increase the company's rates during the period of three years after its first determination, in the absence of any allegations showing changed conditions justifying such increase and moved for the refusal and dismissal of said petition.

At the date fixed for the hearing, the telephone company offered evidence, inter alia, to prove that the rates fixed by the commission had actually produced for the year 1920 a net revenue of only $11,269.05 and for the first eleven months of 1921, of only $10,551.37; that these figures showed a net annual return of less than 2½ per cent on the fair value of the company's property as set forth in said petition and of less than 3½ per cent on the book cost assumed by the commission to be the value of the company's property for rate-making purposes, and that the said rates were therefore unjust, unreasonable and confiscatory. The commission sustained the position of the intervening appellees and without considering any testimony, and practically without a hearing, dismissed the petition. This was, in our judgment, error and requires the reversal of the order.

Section 1 (f) of article II, of the Public Service Company Law, does not provide that no change shall be made in the rates, etc., of a public service company for a period of three years after their determination by the commission, but only that no such change shall be made without application to and the approval of the commission. In the Coplay Cement Mfg. Co. case (271 Pa. 58), the Supreme Court pointed out (p. 64), that the provisions of article II, section 1 (f) are only a limitation or exception on the power of the utility company to initiate rates without the approval of the commission. There is no provision in the act forbidding a change within the three-year period unless new conditions have intervened. The clause imposes no limitation on a change of rates, but only on a change of rates by the act of the company and without the approval of the commission. The appellees argue that such a construction would permit a continual agitation of rates by a utility company. Passing by the unlikelihood of the company's wasting its funds by fruitless applications and hearings unless its application was based on some reasonably substantial ground of relief, we call attention to the fact that there

is no provision forbidding complaints against rates during the period of three years after the commission's determination or for any period. Any consumer, if he sees fit to do so, may complain at any time against the company's rates, even though determined by the commission to be just and reasonable, and is not required to wait three years or one year or even one week before doing so. The rates, though found by the commission to be just and reasonable are not fixed and settled, like the laws of the Medes and Persians, for the period of three years. The only proviso is that once fixed by the commission they shall not be changed by the company for the next three years without the commission's approval.

It is well settled that the commission has no power to fix or determine a rate that is confiscatory. All orders of the commission in so far as they relate to rates to be collected in the future must of necessity be to some extent experimental. If such rates, so determined by the commission, actually result in exorbitant profits to the utility company, any consumer can complain to the commission and if the rate is proven to have resulted in injustice to the public it can be reduced within the three-year period. On the other hand, if the actual results of operation show that a rate fixed by the commission is confiscatory of the company's property, it is entitled to have it revised and the provisions of article II, clause 1 (f) are no bar to such revision within three years. If they were they would be in contravention of the fourteenth amendment to the Federal Constitution, for if the State cannot fix a rate so low as to amount to confiscation of property, it cannot provide for a three-year confiscation of such property.

Whenever a utility company, either under the provisions of article II, section 1 (f) or of article III, section 1 (d) presents its petition alleging that the rates fixed by the commission as just and reasonable have proven to be confiscatory, it is the duty of the commission to set a hearing and afford the company opportunity to prove its

allegations, and if on the whole evidence, it appear that the rates so fixed have in actual operation worked confiscation of the company's property, to revise them irrespective of the time that has elapsed since its former determination.

This does not mean endless opportunities of re-trying one's case, as contended by the appellees, but rather opportunity of showing that results have not worked out as anticipated by the commission or proof of other facts resulting in confiscation.

In the present case, it will be remembered the commission did not attempt to fix the fair valuation of appellant's property devoted to the public service. Therefore there has been no determination by the commission on that subject and this court's affirmation of the commission's order was predicated on the record before us. By the tacit consent of all parties the commission's prior order was based on a book cost in 1919 of $346,840.51. Appellant's petition filed before the end of the year presented figures showing a probable net income for 1921 of about 4½ per cent on such book cost and proof was offered that the actual results for the year reduced such return to less than 3½ per cent. If the actual results of the rates fixed by the commission are to allow a net return of only 3½ per cent on that book cost—which it is not contended is in excess of the fair value of the property—then the rates have proven confiscatory and should be revised.

In any event appellant's petition alleged that the rates determined by the commission had proven to be confiscatory and this allegation was supported by the figures which it presented. It was entitled to be heard and to the opportunity to present evidence to support the averments of the petition. It was entitled to the judgment of the commission on the facts produced in evidence and to the right of appeal therefrom to this court, which, following the decision of the United States Supreme Court in the Ohio Valley Water Company case (253 U. S. 287),

our Supreme Court held to be the judicial tribunal constituted, in case of appeal, to pass its independent judgment on the law and facts involved in such issue of confiscation: (271 Pa. 346). If a hearing is denied the applicant, if it is refused the opportunity to produce evidence in support of its claim of confiscation, how can this court exercise any independent judgment on the facts?

We are all of the opinion that irrespective of the merits or ultimate result, the appellant was entitled to produce evidence to support its allegations that the rates fixed by the commission had proven confiscatory and that such evidence should have been considered by the commission as part of the record in passing upon appellant's application to increase its rates,—that it was error for the commission to dismiss the application on petition and answer.

The order of the commission is reversed and the record is remanded with directions to grant a hearing upon such application and to enter such order thereupon as the evidence adduced shall warrant and as to right and justice may appertain.

Costs on this appeal to be paid by the intervening appellees.