Beaver Valley Water Company, Appellant, *v.*
Pennsylvania Public Utility Commission.

Argued April 25, 1940.

Before KELLER, P. J. CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT,
JJ.

*Joseph A. Beck,* with him *Homer H. Swaney,* for appellant.

*Harry H. Frank,* with him *Harry M. Showalter,* for appellee.

PER CURIAM, June 24, 1940:

The Pennsylvania Public Utility Commission, of its own motion, on June 21, 1937, instituted an inquiry and investigation into the fairness, reasonableness and justness of the rates and charges of the Beaver Valley Water Company. After a number of hearings had been held, the commission on March 15, 1938, acting under the authority of section 310 of the Public Utility Law of May 28, 1937, P. L. 1053, fixed, determined and prescribed temporary rates to be charged pending the final determination of the proceeding, based upon what the commission then estimated to be the original cost of the respondent's property, less retirements and accrued depreciation.

The respondent did not appeal to this court, as it

might have done, within the thirty days prescribed by the Public Utility Law, and raise in this court the question of the constitutionality of that section of the statute [1] as respects both the Federal and the State Constitutions. Instead, it filed a suit in equity in the District Court of the United States for the Western District of Pennsylvania to enjoin the enforcement of said temporary rates, and obtained a temporary restraining order from District Judge GIBSON, and after a hearing before a Three Judge Federal Court (Circuit Judge DAVIS, and District Judges GIBSON and SCHOONMAKER), a preliminary or interlocutory injunction restraining their enforcement was granted on June 23, 1938. In its order granting the preliminary injunction the court found, from the evidence taken before the commission, that the respondent's used and useful property devoted to the public service had a present value of not less than $3,500,000—as over against the commission's estimate of original cost of $2,586,864.85—and that its net annual revenue from the temporary rates would be less than 4% on the present fair value, and that the order fixing temporary rates was confiscatory.

Thereafter testimony was taken before a special master appointed by said court, and testimony was produced by the respondent tending to show that the present fair value of said property was upwards of $4,250,-000. The commission presented no evidence. Hearing on the motion for permanent injunction was had before Circuit Judge MARIS (who succeeded Judge DAVIS as the circuit judge necessary for the court), and District Judges GIBSON and SCHOONMAKER, and on July 7, 1939 that court dissolved the interlocutory injunction theretofore issued and dismissed the bill, holding, in substance, that because paragraph (e) of section 310 of

---

[1] Apparently, under the provisions of sections 310 and 1103, the temporary rates so prescribed would have remained in force, pending the determination of the appeal.

the Public Utility Law provided that if the rates as finally determined were in excess of the rates prescribed in the temporary order, the utility should be permitted to amortize and recover by means of a temporary increase over such final rates the difference between the gross income obtained from the temporary rates during the period they were in effect and that which would have been obtained under the final rates, the provision in the statute (sec. 310(a) ), authorizing the commission to prescribe temporary rates based on the original cost (when first devoted to public use), less accrued depreciation, of the physical property of the utility, used and useful in the public service, was not finally confiscatory nor an unconstitutional deprivation of property under the Fourteenth Amendment, and hence the Federal Court was without jurisdiction to enjoin the enforcement of the temporary rates. See *Beaver Valley Water Co. v. Driscoll,* 28 Fed. Supp. 722 (1939).[2] By a subsequent order entered July 29, 1939, denying a petition for rehearing, the court vacated and set aside the findings of fact and conclusions of law made on the allowance of the plaintiff's motion for preliminary injunction, which found the temporary rate order to be unreasonable and confiscatory.

The respondent—plaintiff in that suit—did not appeal to the Supreme Court of the United States, as permitted by the Judicial Code, Title 28, §380. Instead, on August 14, 1939 it filed with the commission a petition asking for (a) a hearing with respect to the interim report and order of March 15, 1938, and modification thereof, and (b) the completion without further delay of the inquiry and investigation instituted by the commission as aforesaid; and on September 26, 1939, it filed a motion to rescind said interim report and order. The commission, after oral argument, on September 28, 1939 entered an order denying the prayer of the petition

---

[2] The prior order is reported in 23 Fed. Supp. 795 (1938).

for a hearing relative to modification of the interim report and order, which, in effect denied the motion to rescind. The respondent, thereupon, on October 26, 1939 appealed to this court.

The commission moved the court to quash the appeal on the grounds (1) that, no petition for a rehearing having been filed by the respondent within fifteen days after the service of the interim order (sec. 1006), and no appeal having been taken by respondent from the interim order within thirty days after the service of the order upon it (sec. 1101), the said order became final and not subject to appeal; and (2) that the order of the commission dated September 28, 1939, denying the respondent's petition for a hearing relative to the modification of the said interim order of March 15, 1938, is not an order from which an appeal will lie. The respondent filed an answer and the court heard argument on the preliminary motion to quash. The motion must be sustained.

A party litigant cannot be permitted by a motion or petition to reconsider, or hear and modify, an appealable order from which no appeal was taken within the statutory period allowed by law, to reopen the matter thus disposed of and thereby nullify the limitation for appeal fixed by statute.

We said in *Mayer v. Brimmer,* 15 Pa. Superior Ct. 451, 454, in which the Act of May 20, 1891, P. L. 101, authorizing an appeal from the decision of a court opening, vacating or striking off a judgment, or refusing to open, vacate or strike off such judgment, was attempted to be used as a means of reviewing a judgment not appealed from within the statutory period: "If the proceedings which led up to this judgment were irregular, or if the judgment was erroneous, the plaintiff had an adequate remedy by appeal. Instead of availing himself of this remedy he allowed the time to appeal to pass without any action on his part, and on November 28, 1899, moved to strike off the judgment, and from the

order refusing this motion took the present appeal. Under the circumstances we are not called upon to determine whether or not the judgment was irregular or erroneous; it is sufficient to show that it was not void. And if it was not void the court committed no error in refusing to strike it off after the time for appeal had gone by. The principles controlling the question for decision are clearly enunciated in *Clarion, etc., R. Co. v. Hamilton,* 127 Pa. 1. It was not intended in the Act of 1891 to give a party aggrieved by a judgment obtained in an adverse proceeding, which at the worst is only erroneous and not void, two opportunities to obtain a reversal." To the same effect, see *American Soda Water Co. v. Taggart,* 46 Pa. Superior Ct. 123, 125; In re *Inter-County Bridge,* 82 Pa. Superior Ct. 59, 61; *Kaufmann & Baer Co. v. Landau,* 93 Pa. Superior Ct. 457, 460, 461; *Hedley v. Snipes,* 124 Pa. Superior Ct. 396, 404, 188 A. 617; *Bobbitt's Est.,* 131 Pa. Superior Ct. 386, 390, 200 A. 279; *Friel v. Beadle,* 320 Pa. 204, 205, 182 A. 517.

The Public Utility Law of 1937, P. L. 1053, contains nothing opposed to this legal principle. The provision in section 1101 that any party affected by an order of the commission may appeal therefrom to this court "within thirty days after ...... the service of the order refusing such application [for rehearing], or the service of an order modifying, amending, rescinding or affirming the original order" is expressly based on the prior condition (see below, note 3), that an application for a rehearing was pending and undisposed of in the thirty

---

[3] The wording of section 1101, in this respect, is as follows: "Section 1101. Appeals to Courts; Jurisdiction and Practice— (a) Within thirty days after the service of any order by the commission, *unless an application for a rehearing may be pending, and then* within thirty days after the service of the order refusing such application, or the service of an order modifying, amending, rescinding, or affirming the original order, any party to the proceedings affected thereby may appeal therefrom to the Superior Court." (Italics supplied).

days following service of the order; and the application for a rehearing, thus referred to in section 1101, is that provided for in sec. 1006, which must be made within fifteen days after service of the order. It follows then that unless a rehearing is applied for within fifteen days after service of the order, the party affected thereby must appeal within thirty days after the service of the order; and if a rehearing has been applied for within fifteen days, then an appeal must be taken within thirty days after the application is refused, or within thirty days after the order is modified, amended, rescinded or affirmed pursuant to such application. It has no reference whatever to a petition for hearing and modification, or rehearing, filed a year and four months after the time allowed for an appeal had expired.

The same question came up before us and was fully considered in *Penna. R. Co. et al. v. Public Service Comm.,* 118 Pa. Superior Ct. 380, 389, 391, 179 A. 850, relating to an order of the commission requiring the elimination of a grade crossing, from which no appeal was taken within the statutory period. We there said: "The present appeals are from an order of the Commission refusing to review and reconsider its original order, made nearly four months after that original order of the Commission had become final and not subject to appeal. In an action at law these appeals would not lie, but would be dismissed as an attempt to evade the statute limiting the time within which appeals may be taken: *Mayer v. Brimmer,* 15 Pa. Superior Ct. 451, 454. The same strict ruling will not be applied in a proceeding of this kind, but the grounds for a reconsideration should be restricted to the new matters and new or changed conditions set up in the joint petition, which had arisen since and were not presented in the several petitions of these appellants filed April 19, 1934 and April 25, 1934 respectively, and dismissed by the Commission on June 25, 1934 and not appealed from. See *D. & H. Co. v. P. S. C.,* 96 Pa. Superior Ct. 169; *A. T.*

*&.S. F. Ry. Co. v. United States*, 284 U. S. 248. Parties, even in a proceeding of this kind, cannot be permitted, by a second motion to review and reconsider, to raise the same questions which were specially considered and decided against them and not appealed from. A motion to reconsider cannot be made a substitute for an appeal, after the time for taking an appeal has expired ...... Had the railroad company taken an appeal from the order of the Commission, following the dismissal of its first petition to reconsider the order, because of the allocation against it of $25,000 of the cost chargeable against the County—rather than the cost of the approaches to the bridge—a different question might be presented; ...... but after specially raising the question by a petition to reconsider, the railroad company took no appeal from the order of the Commission or the dismissal of its petition. By its failure to appeal in time, the railroad company has relieved us of the necessity of considering this point; ...... For reasons already given, therefore, we shall not consider, in this appeal, questions which should have been raised on an appeal from the order of the Commission filed April 2, 1934, or from the order refusing to review and reconsider that order, filed June 25, 1934. Most of the cases cited by the railroad company deal with those questions, which are not properly before us in this appeal ...... In all of the cases relied on, an appeal was promptly taken by the appellant from the order complained of. In none of them, did the appellant acquiesce with the decision, until the order had become final and not subject to appeal, and then by injecting a new question in the case attempt to reopen and review matters which had been raised and finally decided against it."

It will be noted that the order appealed from in that case was a final one, directing the elimination of a grade crossing and allocating the cost; it had nothing to do with rates. And the matters considered by us on the appeal related to developments in the situation on the

ground which, it was alleged, had taken place after the order had become final. We refused to pass upon matters adjudicated in the order from which no appeal had been taken in time.

The present appeal really seeks to set aside an interim order prescribing temporary rates, which became effective because not appealed from. The commission was not required by the Act to prescribe temporary rates, but having done so, and having had them sustained, without appeal, by the tribunal to which the respondent resorted, it can not be required to reconsider the matter because of evidence submitted by the respondent bearing on, and relevant to, the question of the rates finally to be determined. Unless delayed further by the respondent's resort to a bill in equity in the Court of Common Pleas of Dauphin County to have said temporary rates set aside, there is no reason why the ascertainment of the present fair value of respondent's property devoted to the public service should not be proceeded with and such value be promptly determined in accordance with the constitutional principles laid down by the Supreme Court of the United States and the Supreme Court of Pennsylvania, and the fair, just and reasonable rates to be charged by the respondent, based on the value of its property so ascertained, be fixed and determined; bearing in mind the provision of sec. 310 (e) for amortization and recovery by the respondent of whatever amount it is entitled to if the final rates so fixed and determined should exceed the temporary rates prescribed under the interim order.

We deem it proper to say, in this connection, that the present case stands on a different footing from the usual run of rate cases, by reason of the fact that this Court, after extended proceedings [4], on March 5, 1921

[4] See *Beaver Valley Water Co. v. Public Service Comm.*, 71 Pa. Superior Ct. 43; *Beaver Valley Water Co. v. Public Service Comm.*, 76 Pa. Superior Ct. 255; *Public Service Comm. v. Beaver Valley Water Co.*, 271 Pa. 358, 114 A. 373.

determined that the fair value of respondent's property for rate making purposes on February 1, 1915 was somewhat in excess of $1,475,000. While we did not fix the value exactly, the discussion of the subject in the opinion—See *Beaver Valley Water Co. v. Public Service Comm.,* 76 Pa. Superior Ct. 255, 272—shows that that figure might be taken approximately as the value as of that date. The Supreme Court, which had held in abeyance an appeal in the same proceeding from 71 Pa. Superior Ct. 43, pending a decision by the Supreme Court of the United States in the case of *Ohio Valley Water Co. v. Ben Avon Boro* (253 U. S. 287) raising the same constitutional questions, remitted the case to this court, with directions to exercise our "independent judgment" in accordance with the decision of the Supreme Court of the United States, and subsequently affirmed our action as a proper exercise of that judgment—see *Public Service Comm. v. Beaver Valley Water Co.,* 271 Pa. 358, 114 A. 373.

In view of that determination there is no occasion for the commission to delve again into the matters of original cost and other items of bookkeeping which were not very satisfactorily kept, but were passed upon and considered by us in arriving at our determination of the fair value of respondent's property on February 1, 1915; for the basic value on February 1, 1915 cannot be fixed by the commission at less than $1,475,000. The determination of this court, affirmed by the Supreme Court, after seven years of litigation (including two appeals to this court and two appeals to the Supreme Court) as to the value of respondent's property on February 1, 1915, is an *adjudication* which may not be disregarded or set aside by the commission. The labor and expense incident to those proceedings, resulting in the adjudication determining the value of respondent's property on that date, is not to be thrown away or wasted by a reopening by the commission of those mat-

ters passed upon and determined by this court and affirmed by the Supreme Court.

The commission, starting with said determination as a base figure, should deduct therefrom reasonable amounts because of retirements, depreciation and obsolescence, and should add thereto the fair and reasonable cost or value of additions, improvements and betterments, and should take into account in arriving at the *present* fair value any distinct trend or change in basic prices between 1915 and the present. The rate base being thus ascertained, on which the utility is entitled to a fair and reasonable rate of return, proper allowances should be made for operating expenses, taxes and annual depreciation, and similar items, and the resulting sum will represent the gross income which the respondent is entitled to receive; and a schedule of rates designed to produce that result should be put into effect.

We recognize that orders fixing rates are not res judicatae. Valuations, too, are subject to change in the respects above noted. But a judgment of a court (declared to be the judicial tribunal authorized by law to use its "independent judgment" in passing upon questions of confiscation—271 Pa. 346 and 359), which fixes a basic valuation of a utility's property, as of a certain date after a full consideration of the constitutional elements entering into such determination, affirmed by the supreme judicial authority of the State, does constitute an adjudication of such value as of that date, which must be accepted and followed by the Public Utility Commission in fixing future rates.

The general subject is considered in *Clark's Ferry Bridge Co. v. Public Service Comm.*, 108 Pa. Superior Ct. 49, 58, 59, 61, 62, 165 A. 261, affirmed 291 U. S. 227, 233, 234; *Kittanning Telephone Co. v. Public Service Comm.*, 78 Pa. Superior Ct. 436, 442; *City of Phila. v. Public Service Comm.*, 84 Pa. Superior Ct. 135, 144, 145; *Willcox v. Consolidated Gas Co.*, 212 U. S. 19, 22, 47; *Napa Valley Co. v. R. R. Comm.*, 251 U. S. 366, 372-3.

As the present appeal will be quashed, we are not called upon to pass on the constitutionality—under either the Federal or State Constitution—of section 310 as drawn, where the temporary rates prescribed are to be based on the original cost, or *estimated original cost,* of the utility's physical property when first devoted to public use, less accrued depreciation, without giving consideration to *any* of the other matters which properly enter into a determination of its fair value. That provision was not passed upon or upheld by the Supreme Court of the United States in *Driscoll v. Edison Light & Power Co.,* 307 U. S. 104, as respects the Federal Constitution, nor by this Court in *Solar Electric Co. v. Public Utility Comm.,* 137 Pa. Superior Ct. 325, 9 A. 2d 447, with respect to either the Federal or our State Constitution; and our State Supreme Court has not ruled upon it.

The appeal is quashed.