## Branch Motor Express Co. v. Commonwealth

*Weiss & Rhoads*, for plaintiff.

*G. D. Weiss, Wm. M. Rutter*, and *T. McKeen Chidsey*, Attorney General, for Commonwealth.

NEELY, J., July 5, 1949.—This is an action of assumpsit brought against defendant under section 1201(*d*) of the Public Utility Law of May 28, 1937, P. L. 1053, to recover part of an assessment which plaintiff claims was unlawfully and erroneously levied under section 1201(*b*) of that law. Plaintiff claims that the assessment was excessive. Plaintiff paid the amount of the assessment under protest. The matters are before the court on plaintiff's statement of claim as amended, to which statement defendant filed an affidavit of defense raising questions of law under section 20 of the Practice Act of May 14, 1915, P. L. 483, 12 PS §471. Such affidavit, being in the nature of a statutory demurrer, admits the material and relevant matters pleaded, although it does not admit legal conclusions: Simon, Admrx., v. Hudson Coal Co., 350 Pa. 82, 83 (1944) ; Henzel et al. v. Patterson Building and Loan Association No. 2 et al., 128 Pa. Superior Ct. 531 (1937).

Plaintiff is a common carrier of property certificated for intrastate traffic by the Public Utility Commission,

and for interstate traffic by the Interstate Commerce Commission. The Public Utility Commission assessed against plaintiff the amount it determined to be due as plaintiff's share of the expenses of operating the commission for the year 1941 under the Public Utility Law of May 28, 1937, P. L. 1053, art, XII, sec. 1201, as amended, 66 PS §1461. Plaintiff was billed on August 24, 1943, for the amount of the assessment.

The procedure for making assessments against utilities for the purpose of paying the expenses of the commission is set forth in section 1201(b) of the act as follows: "Periodically, the commission shall determine the aggregate of its expenditures . . .", and these expenditures, after making certain deductions therefrom "shall be (so) allocated to the groups of public utilities furnishing the various types of service", and "every public utility shall then pay to the commission an amount equal to such proportion of the allocation to its group as the gross intrastate operating revenues of the public utility bear to the total gross intrastate operating revenues of the group."

The amount of the assessment against plaintiff was predicated on plaintiff's estimated gross intrastate operating revenue for the year 1941 made by the commission when plaintiff failed to file its statement of such revenue with the commission. Plaintiff takes exception to this method of procedure on the part of the commission and claims that the use of such procedure for the purpose of making the estimated assessment for the year 1941 resulted in an assessment that was excessive, invalid and therefore unlawful and erroneous.

Plaintiff complains that for the years 1937-1938 the commission's assessment procedure was to bill plaintiff biannually, and that this procedure was followed for the years 1939-1940. The statute in force during

these periods was the Act of 1937, as amended by the Act of September 28, 1938, P. L. 44.

It is averred, however, that defendant did not give any notice of its intention to change this assessment procedure to an annual basis, but that the commission did change such procedure to an annual basis at the end of the year 1941. It is averred that the commission's notice with respect to submitting a statement of revenue for the year 1941 was sent to the wrong address. Hence, it is claimed that plaintiff was without notice that this statement was due for the year 1941. It is argued by plaintiff that under these circumstances the commission was wrong in making the estimated assessment.

The difficulty with plaintiff's position in this respect is that the Act of July 8, 1941, P. L. 280, sec. 1, further amended the Act of 1937. It added important language to section 1201(b) of the act, made it imperative to submit statements of revenue on an annual basis, and imposed upon the utility the affirmative duty of submitting such statements. The amendment of 1941 reads:

"On or before March thirty-first of each year, every public utility shall file with the commission a statement under oath showing its gross intrastate operating revenues for the preceding calendar year: Provided, however, That if any public utility shall fail to file such statement on or before March thirty-first as aforesaid the commission shall estimate such revenues, which estimate shall be binding upon the public utility for the purposes of this section."

Under the amendment of 1941 the affirmative duty to file a statement of gross intrastate operating revenue was placed upon plaintiff. It was bound to know under the law that it had this duty, and it was also bound to know that should it fail to file such a statement for the year 1941 on or before March 31, 1942,

that then and in that event the commission, in accordance with the act of assembly, would make its own estimate. Plaintiff failed to file this statement, and the commission, following the express direction of the act, estimated the gross intrastate operating revenue. On the basis of this estimate of revenue, the assessment in question was made.

The commission having made its assessment, duly notified plaintiff thereof and billed plaintiff therefor. Thereupon, plaintiff availed itself of the remedy set forth in section 1201 (c) of the act, filed objections to the assessment, requested a hearing, and did have a hearing in support of said objections.

Plaintiff in its objections claimed and now claims that the commission improperly took the gross intrastate operating revenue from its annual report, which set forth said revenue to be in the total amount of $578,220.73. Plaintiff then claimed and now claims that this figure represented an apportionment between interstate and intrastate operating revenue based upon the total number of miles traveled in Pennsylvania, and that the figure represents the income from all miles actually operated in Pennsylvania, whether intrastate or interstate traffic. Plaintiff claims that the correct figure for its gross intrastate operating revenue for 1941 was $80,772.48, and that defendant by using the higher figure arrived at a grossly excessive assessment.

The provisions of paragraph 1201 (c) are as follows:

"(c) The commission shall give notice by registered mail to each person or corporation of the amount lawfully charged against him or it under the provisions of this section. Within fifteen days after receipt of such notice, the party against which such assessment has been made may file with the commission objections setting out in detail the grounds upon which the objector regards such assessment to be excessive, errone-

ous, unlawful or invalid. The commission, after notice to the objector, shall hold a hearing upon such objections. After such hearing, the commission shall record upon its minutes its findings on the objections and shall transmit to the objector, by registered mail, notice of the amount, if any, charged against him in accordance with such findings. Each person or corporation shall pay the amount of any such assessment to the commission within thirty days after receipt of notice of such assessment, unless objections are filed thereto, in which case such assessment shall be paid within ten days after receipt of notice of the findings of the commission with respect to such objections. If payment is not made as aforesaid, the commission may suspend or revoke certificates of public convenience, certify automobile registrations to the Secretary of Revenue for suspension or revocation or, through the Department of Justice, may institute an appropriate action at law for the amount lawfully assessed, together with any additional cost incurred by the commission or the Department of Justice by virtue of such failure to pay."

On March 17, 1944, plaintiff was notified by the Public Utility Commission that its objections were dismissed, and on March 28, 1944, plaintiff filed with the commission a petition for reconsideration of the commission's order dismissing said objections. The petition for reconsideration was dismissed and plaintiff was notified of such dismissal on May 19, 1944, whereupon plaintiff paid the amount of the assessment under protest and brought this suit.

It is to be observed that section 1201 (c) says that each corporation shall pay the amount of the assessment within 10 days after receipt of notice of the findings of the commission with respect to such corporation's objections. This plaintiff did not do, but instead 11 days after receipt of notice that the objections were

dismissed, plaintiff filed its petition for reconsideration, and not until after this was dismissed did plaintiff then pay under protest and bring this suit.

We must now look at section 1201 (*d*) to determine rights of plaintiff with respect to having this court make a judicial determination in this suit of the matters pertaining to the commission's assessment. This section reads as follows:

"(d) No suit or proceeding shall be maintained in any court for the purpose of restraining or in anywise delaying the collection or payment of any assessment made under paragraphs (a), (b), and (c) of this section, but every person or corporation against whom or which an assessment is made shall pay the same as provided in paragraph (c) of this section. Any person or corporation making any such payment may, at any time within two years from the date of payment, sue the Commonwealth in an action at law to recover the amount paid, or any part thereof, upon the ground that the assessment was excessive, erroneous, unlawful, or invalid, in whole or in part, provided objections, as hereinbefore provided, were filed with the commission, and payment of the assessment was made under protest either as to all or part thereof. In any action for recovery of any payments made under this section, the claimant shall be entitled to raise every relevant issue of law, but the findings of fact made by the commission, pursuant to this section, shall be prima facie evidence of the facts therein stated. Any records, books, data, documents, and memoranda relating to the expenses of the commission shall be admissible in evidence in any court, and shall be prima facie evidence of the truth of their contents. If it is finally determined in any such action that all or any part of the assessment for which payment was made under protest was excessive, erroneous, unlawful, or invalid, the commission shall make a refund to the claimant as

directed by the court, which shall be made from the current appropriation of the commission."

The right to have a judicial review of matters involving assessments is determined by the language of sections 1201(c) and 1201(d) of the act. When objections are overruled, the assessment shall be paid in 10 days (section 1201(c)) and every corporation against which such assessment shall be made shall pay the same as provided in section 1201(c), and any corporation making such payment under protest shall be entitled to bring suit within two years as provided in section 1201(d). The difficulty with plaintiff's position in this case is that plaintiff did not make the payment as required in section 1201(c) in order to ensure a judicial determination of the questions involved in the assessment. Plaintiff did not follow the procedure outlined in the act for the purpose of having a review of the matters here in controversy.

The Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, par. 2, 46 PS §551 provides:

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

The same rule is stated by the Supreme Court in Farmers-Kissinger Market House Co., Inc., v. Reading et al., 310 Pa. 493, 498 (1933):

"When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning. This principle is to be adhered to notwithstanding the fact that the court may be convinced by extraneous circumstances that the legislature intended to enact something very different from that which it did enact."

And in Grayson v. Aiman, Inc., 252 Pa. 461, 466 (1916), the Supreme Court said:

"Where the words of a statute are plain and clearly define its scope and limit, construction cannot extend it."

See also Walker v. Pennsylvania Railroad Co., 151 Pa. Superior Ct. 80 (1942); Imperial Cardiff Coal Co. Appeal, 156 Pa. Superior Ct. 301, 305 (1944); Roth Appeal, 159 Pa. Superior Ct. 145, 152 (1946).

The language of sections 1201(c) and (d) with respect to the right to have judicial review in matters pertaining to assessments is certainly clear and free from ambiguity. We have no right to restrict or enlarge upon the meaning of the words of these sections. Plaintiff brought this suit subsequent to May 19, 1944, and after its petition for reconsideration was dismissed. But the right to sue under section 1201(d) is expressly based on the prior condition that payment of the assessment be made under protest within the 10-day period. In this case, the payment should have been made within 10 days of March 17, 1944, the date of plaintiff's notification by the commission that its objections had been dismissed.

Plaintiff claims that the acceptance of its petition for reconsideration by the Public Utility Commission operated to extend the time for paying the assessment. It is pointed out that since the commission did in fact accept the petition for reconsideration, and did reconsider and then dismiss it, that the 10-day period should run from the date of such dismissal. And plaintiff points out that payment was made under protest within 10 days of the date the petition for reconsideration was dismissed.

In Beaver Valley Water Co. v. Pennsylvania Public Utility Commission, 140 Pa. Superior Ct. 297 (1940), an appeal from an order of the Public Utility Commission was filed more than 30 days after the commission's order was served upon appellant, contrary to section 1101, 66 PS §1431 of the Public Utility Law. Appel-

lant, subsequent to the 30-day period, had filed a petition with the commission for rehearing. This petition was eventually dismissed, and then within 30 days after the dismissal of the petition for rehearing, the appeal was prosecuted. The Superior Court quashed the appeal on motion of the commission. The fact that the commission in its discretion permitted the filing of the petition for rehearing subsequent to the expiration of the statutory period for appeal, did not operate to extend the appeal period beyond the 30-day limit provided in the statute. It was pointed out that a petition for rehearing would only extend the statutory period if it was filed within 15 days after the commission's order, and since the petition for rehearing was filed after the 30-day period, the necessary prior condition to an extension of time had not been fulfilled. The Superior Court said at page 302:

"A party litigant cannot be permitted by a motion or petition to reconsider, or hear and modify, an appealable order from which no appeal was taken within the statutory period allowed by law, to reopen the matter thus disposed of and thereby nullify the limitation for appeal fixed by statute."

See also Pennsylvania Railroad Co. et al. v. Public Service Commission et al., 118 Pa. Superior Ct. 380, 389 and 391 (1935). By the same token, the petition to the commission for reconsideration of this case could not operate as a waiver or extension of the necessary prior condition that payment shall be made within the 10-day period as provided in the statute if a suit is to be allowed for the purpose of having a judicial review of the commission's assessment.

There is, of course, no statutory provision authorizing the filing of a petition for reconsideration with respect to assessments charged under section 1201. The provisions of section 1006, 66 PS §1396, of the Public Utility Law relating generally to rehearings

have no application in this case. Section 1201(*e*) expressly says:

"The procedure in this section providing for the determination of the lawfulness of assessments and the recovery back of payments made pursuant to such assessments shall be exclusive of all other remedies and procedures."

It is obvious that it was the intention of the legislature by section 1201 to provide an exclusive procedure and remedy for the payment of assessments and recovery back of payments made pursuant to such assessments. And we must look solely therefore to the provisions of this section to determine what that procedure is. In this section there is no statutory authority for a petition for reconsideration. Where there is a statutory method provided for judicial review, the terms of the statute must be strictly followed: 42 Am. Jur. 669.

We do not believe the pleadings in this case bear out plaintiff's contention that there was a failure to meet the requirements of due process in the procedure of this case before the commission. The Superior Court in Armour Transportation Co. v. Pennsylvania Public Utility Commission, 138 Pa. Superior Ct. 243, 249 (1939) said:

"The requirement of due process of law in procedural matters applies to proceedings before administrative tribunals as well as before judicial bodies. It is a well-recognized principle in our law that no man's property rights shall be impaired or penalties imposed without notice and an opportunity to appear and be heard."

And in National Automobile Corp. v. Barfod, 289 Pa. 307, 311 (1927), the Supreme Court stated the rule as follows:

"The requirement of due process of law, however, applies to administrative as well as to judicial pro-

ceedings. The doctrine of notice and hearing thus becomes a more potent force in our land, because it applies to the decisions and acts of administrative officials, and, unless there are extraordinary emergencies, this essential requisite of due process cannot be dispensed with."

In Railroad Commission of California et al. v. Pacific Gas and Electric Co., 302 U. S. 388, 393 (1937), the Supreme Court of the United States stated the rule as follows:

"The right to a fair and open hearing is one of the rudiments of fair play assured to every litigant by the Federal Constitution as a minimal requirement. Ohio Bell Telephone Co. v. Public Utilities Comm'n, 301 U. S. 292, 304, 305. There must be due notice and an opportunity to be heard, the procedure must be consistent with the essentials of a fair trial, and the Commission must act upon evidence and not arbitrarily. Interstate Commerce Comm'n v. Louisville & Nashville R. Co., 227 U. S. 88, 91; St. Joseph Stock Yards Co. v. United States, 298 U. S. 38, 51, 73; Morgan v. United States, 298 U. S. 468, 480, 481; Ohio Bell Telephone Co. v. Public Utilities Comm'n, supra. As we have seen, the respondent was heard, the Commission received the testimony of respondent's witnesses, its exhibits and arguments. There is nothing whatever to show that the hearing was not conducted fairly."

It is true that the Public Utility Commission estimated the gross intrastate operating revenue of plaintiff for the year 1941 when plaintiff failed affirmatively to report the same on or before March 31, 1942. Section 1201(b) in clear and unmistakable terms makes provision for such assessment for the purpose of bearing the expenses of the commission. As to the necessity for and legality of such assessments by the commission, see opinion of Attorney General, Computations of Public Utility Assessments, 37 D. & C. 508 (1940).

Plaintiff was notified of the amount of the assessment, was given an opportunity to file objections, and was given a hearing. And as stated in Railroad Commission of California et al. v. Pacific Gas and Electric Co., supra, "there is nothing whatever to show that the hearing was not conducted fairly." We clearly think that the procedure here meets the requirement of due process before an administrative tribunal. If the commission misconceived or misconstrued the law, then plaintiff under the act had the right to have a judicial determination of the matter.

We believe the methods set forth for a judicial determination in section 1201 (*d*) meet the requirement of due process. This court in Soble et al v. State Board of Pharmacy, 40 D. & C. 215, 220 (1940), speaking through Judge Hargest, said:

"Where property rights are involved, some method of review of the action of administrative officers or boards by a judicial tribunal must be afforded, otherwise there is not due process of law."

See also Harris v. State Board of Optometrical Examiners, 287 Pa. 531, 534 (1926); Plymouth Coal Co. v. Commonwealth of Pennsylvania, 232 U. S. 531, 547 (1913); National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U. S. 1, 47 (1936).

The statute does not deny in any way the right to have a judicial review. Plaintiff is in its present position, not because the statute denies it the right of such review, but because it has failed to pursue the procedure outlined in the statute for the purpose of having a judicial determination concerning the matters involved in the assessment. We are bound to give effect to the plain and unmistakable language of the legislative enactment. It was necessary that plaintiff comply with that statute. This plaintiff has failed to do in that it did not pay the amount of its assessment within

the requisite 10 days. See Bradford Electric Co. v. Driscoll et al., 35 D. & C. 312, 316 (1939).

A defective statement of claim may be made a good pleading by amendment, and recognition of the right to amend is not a matter of discretion with the court but is a positive duty: Euster v. Standard Accident Insurance Co., 139 Pa. Superior Ct. 6 (1940). However, on demurrer, when the court's decision on the question of law disposes of plaintiff's claim, then and in such event judgment will be entered for defendant on the demurrer: Simon, Admrx., v. Hudson Coal Company, supra. In this case, our decision on the questions of law raised by the demurrer disposes of plaintiff's claim, and therefore judgment must be entered for defendant on the demurrer.

And now, July 5, 1949, for the foregoing reasons, defendant's statutory demurrer is sustained and judgment is directed to be entered for defendant.