**ASSOCIATED OIL & GAS CO.,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent.

No. 18142.

United States Court of Appeals
Fifth Circuit.

July 12, 1960.

**32**

Hugh Q. Buck, Jefferson D. Giller, Wallace T. Shanks, Richard L. McGraw, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., Royal J. Voegeli, Washington, D. C., for petitioner.

Louis C. Kaplan, Atty., Willard W. Gatchell, Gen. Counsel, Howard E. Wahrenborck, Sol., W. Russell Gorman, Asst. Gen. Counsel, Washington, D. C., for respondent.

Before TUTTLE, CAMERON and WISDOM, Circuit Judges.

**TUTTLE, Circuit Judge.**

This petition for review attacks the order of the Federal Power Commission denying petitioner the right to collect the difference between its old filed price of gas and the new, but suspended, rate during the period following the period of suspension under Section 4(e) of the Natural Gas Act [1] until the order approving the new rate was made. The basis of the Commission's denial was petitioner's failure to file the bond authorized in the Act to secure the repayment of any excess amount collected. None was collected.

Both parties agree that there is here for decision only a single question of statutory construction: Is the filing of the bond by the natural gas company a condition precedent to the *becoming effective* of the new rate or is the filing of the bond only a condition precedent to the actual *collection* of the increased rate pending final determination by the Commission of its reasonableness.

Here, petitioner and Orange Grove Oil & Gas Corporation, on January 26, 1955, filed with the Commissioner new contracts negotiated with their sole purchaser, Trunkline Gas Company, providing for a price of 12¢ per MCF, plus three-fourths of increased taxes, plus ¼¢ per MCF for dehydration. The Commission suspended the rates until April 26, 1955. The proceedings were not concluded on that date, so Associated and Orange Grove each filed "motions" with the Commission under the provi-

[1]. 15 U.S.C.A. § 717c(e) provides as follows:

"Whenever any such new schedule is filed the Commission shall have authority * * * to enter upon a hearing concerning the lawfulness of such rate * * *; and, pending such hearing and the decision thereon, the Commission * * * may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect: * * * If the proceeding has not been concluded and an order made at the expiration of the suspension period, on motion of the natural-gas company making the filing, the proposed change of rate, charge, classification, or service shall go into effect. Where increased rates or charges are thus made effective, the Commission may, by order, require the natural-gas company to furnish a bond, to be approved by the Commission, to refund any amounts ordered by the Commission, to keep accurate accounts in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts were paid, and, upon completion of the hearing and decision, to order such natural-gas company to refund, with interest, the portion of such increased rates or charges by its decision found not justified."

sions of the act providing that in such circumstances, "on motion of the natural-gas company making the filing, the proposed change of rate * * * shall go into effect."

Thereupon, the Commission, after five months of consideration issued its order entitled "Order Making Effective Proposed Rate Changes Upon Filing of Bond to Assure Refund of Excess Charges." This order embodied the following finding:

"The Commission finds: It is appropriate in carrying out the provisions of the Natural Gas Act to prescribe terms and conditions *with respect to refunds* by applicant as hereinafter provided." (Emphasis added.)

It then ordered, so far as relevant to the discussion here:

"(A) *Upon execution* by Applicant of the corporate bond described in paragraph (D) below, and acceptance thereof, evidenced by letter addressed to Applicant by the Secretary of the Commission, *the rates*, charges, and classifications set forth in Applicant's FPC Gas Rate Schedule No. 5 *shall be effective as of April 26, 1955*, subject to further orders of the Commission in this proceeding.

"(B) Applicant shall refund to those entitled thereto the portion of the increased rates and charges made effective as of April 26, 1955, found by the Commission in this proceeding not justified, with interest at the rate of 6% per annum from the date of payment to Applicant until refunded; shall bear all costs of any such refunding * * *.

\* \* \* \* \* \*

"(D) * * *

"Now, Therefore, if Applicant, its successors and assigns, in conformity with the terms and conditions of the order adopted on September 14, 1955, by the Federal Power Commission, In the Matter of Associated Oil & Gas Co. Docket No. G–8519 shall: (1) well and truly *repay* at such times and in such amounts, *to the persons entitled thereto*, and in such manner as may be required by the final order of the Commission in said proceeding, subject to court review thereof, *any portion of such rates and charges collected by Applicant after April 26, 1955*, as such final order may find *not justified*, together with interest thereon at the rate of six (6) per cent per annum from the date of payment thereof to Applicant until refunded; and (2), comply otherwise with the terms and conditions of said order adopted September 14, 1955; and with provisions of the Natural Gas Act relating thereto, then this obligation shall be terminated, otherwise to remain in full force and effect." (Emphasis added.)

By similar order the Commission provided for a bond to be made by Orange Grove. Petitioners were unable to make the bond, and *they did not collect the increased price*. Orange Grove made the bond and they collected the increased price retroactively to April 26, 1955. Subsequently, on November 1, 1957, pursuant to a new filing of the same contract rate of 12¢, the Commission permitted the higher rate to be collected by Associated's giving its "undertaking" to make refunds. Thus, Associated began on November 1, 1957, to collect from Trunkline at the new rate, which it continued to do until final approval of the 12¢ price in its final "Order Terminating Proceedings" on August 31, 1959.[2]

---

2. This long delay in determining whether the increased rate met the standards of "just and reasonable," which was deplored by all concerned, was very largely the result of the absence of any body of rate-making experience of both Commission and industry with respect to a sale of a natural resource owned by the regulated producer where the just and reasonable price for the sale must give effect to a known need for a strong incentive for exploration and development and also yield a return to the owner of the gas for the depletion of his well.

So it turns out that Associated, after filing its motion to make the 12¢ rate effective April 26, 1955, continued to charge the old rate until November 1, 1957, whereas Orange Grove, after filing its motion and after making bond several months later to guarantee the repayment of the excess over the finally approved rate, if any, collected the 12¢ rate retroactively to April 26, 1955, and continued to do so thereafter. On the final hearing Associated sought a provision in the final order permitting it to collect from Trunkline the sum of $393,739.53, representing the difference between the amount collected from it during the 30 months from April 26, 1955, to November 1, 1957, and what it would have been entitled to at the new 12¢ rate. This was denied and motion for rehearing was also denied.

Simply stated, the Commission says that its order conditioned the *becoming effective* of the rate upon Associated's making bond to guarantee repayment of any excess amounts it collected from Trunkline pending final determination; no bond was made, hence the new rate did not become effective.

The petitioner says the statute does not warrant the conditioning of the new rates *becoming effective* on the giving of a bond, but it expressly provides that the rate becomes effective on motion at the end of the suspension date and the only statutory authority for requiring a bond is that the Commission may require a bond only as a *condition to the collection of the higher rate.*

Both because of the plain language of the statute and because of the logic and common sense understanding of what Congress sought to accomplish we agree with the petitioner.

Neither party cites any decided cases that involve the construction of this provision of the Act. Petitioner calls our attention to language of the Supreme Court in United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. 332, 338, 76 S.Ct. 373, 100 L.Ed. 373, and of the Power Commission in El Paso Natural Gas Company, 18 F.P.C. 838, 839, which says in so many words that no action of the Commission is required to effect the change in the rate upon expiration of the suspension date. However, it must be recognized that in making such statements neither the court nor the Commission was faced with the necessity of construing this language of the statute, which *does* say that "on motion of the natural-gas company * * * the proposed change of rate * * * shall go into effect," in connection with the following sentence:

"Where increased rates or charges are thus made effective, the Commission may, by order, require the * * company to furnish a bond * * * to refund any amounts * * * received by reason of such increase."

However, construing the two provisions together seems to strengthen, rather than weaken, the first impression that the giving of the bond is not a condition precedent to the rates becoming effective. The second sentence clearly treats of the change in rate as having thus become effective before it authorizes the Commission to "require the natural-gas company to furnish a bond * * * to refund any amounts, etc."

Even the finding of the Commission in this proceeding was to the effect that it was appropriate to prescribe terms and conditions: not to the becoming effective of the new rate, but "with respect to refunds by applicant." And that is all the bond did provide.

Where, as here, no attempt was made by the applicant to collect the increased rate, no bond was necessary. The failure to make the prescribed bond merely prevented Associated from collecting the increased rate pending final approval of the Commission. It did not prevent it from collecting the finally approved rate after the date which we hold it became effective, April 26, 1955.

We conclude that the appealed from order must be modified to permit petitioner to collect from Trunkline the amount representing the increment of increase for the period between April

26, 1955 and November 1, 1957, a result which not only the statute requires, but which this record discloses Trunkline agrees should be done.

The petition is granted and the cause is remanded to the Commission with directions to modify the order in accordance with this opinion.