In the Matter of the Consolidated Application of **WILMINGTON SUBURBAN WATER CORPORATION** for a General Increase in Rates throughout its Service Territory and Automatic Adjustment in Rates.

Superior Court of Delaware, New Castle.

Submitted Oct. 15, 1976.

Decided Dec. 22, 1976.

**1340**

H. James Conaway, Jr., and Sydney R. Chirlin, of Young, Conaway, Stargatt & Taylor, Wilmington; and William J. Le-Buhn, Philadelphia, Pa., of counsel, for Wilmington Suburban Water Corp.

William D. Bailey, Jr., and David C. McBride, of Bayard, Brill & Handelman, Wilmington, for the Public Service Commission of the State of Delaware.

Joseph C. Kelly, of ICI United States, Inc., Wilmington, and David P. Bruton, of Drinker, Biddle & Reath, Philadelphia, Pa., of counsel, for intervenors.

TAYLOR, Judge.

## I—REFUND

The Commission's order of December 17, 1975 directed the Water Company to refund to its customers the difference between the rate fixed by the Commission and the amount which the Water Company had charged since April 15, 1974. The Water Company contends that in view of the lapse of time between the application for rate increase which was filed on March 15, 1974 and the Commission's order of December 17, 1975, the Commission lacked jurisdiction to make its rate determination retroactive, and hence to order a refund. The Water Company does not dispute the power of the Commission to require that its rate determination be applied prospectively from the date of the order.

The basic policy applicable to public utility rates is found in 26 Del.C. § 161 which provides:

"No public utility shall make, impose or exact any unjust or unreasonable or unduly preferential or unjustly discriminatory individual or joint rate for any

product or service supplied or rendered by it within the State . . ." [1]

Section 151 requires a public utility to file notice of the proposed rate changes with the Commission at least thirty days before the changes will go into effect, "unless the Commission otherwise orders". Section 152 permits the Commission "either upon complaint or upon its own initiative" to hold a hearing "concerning the lawfulness of such rate." Section 155 authorizes the Commission after the hearing to determine the just and reasonable rate to be charged.

■ Section 153 contains a procedure for preventing the proposed rate change from going into effect as scheduled by the public utility. Subsection (a) permits the Commission at any time before the rate becomes effective, pending the hearing and decision on the proposed rate change, to suspend the effectiveness of the change "but not for a longer period than 90 days beyond the time when such rate would otherwise go into effect unless the Commission finds that a longer time will be required for a proper determination of the lawfulness of such rate, in which case the Commission may extend the period for not to exceed 6 months." Subsection (b) permits the public utility to avoid the effect of the suspension "by filing with the Commission a bond in a reasonable amount approved by the Commission with sureties approved by the Commission, conditioned upon the refund, in a manner to be prescribed by order of the Commission, to the persons entitled thereto of the amount of the excess, if the rate so put into effect is finally determined to be excessive." Water Company contends that the time limitation upon the Commission's power to stay the rate increase has the effect of limiting the time within which the Commission can make a rate determination which can have a retroactive effect.

In order to resolve this issue, it is necessary to consider the power of the public utility to make a rate change, the duty of the public utility to charge just and reasonable rates, and the power of the Commission to determine just and reasonable rates. It is clear that under § 151 the public utility, unless the Commission takes countervailing action, may put into effect a rate change on 30 days notice to the Commission. This means that unless the Commission takes such action, the public may be charged those rates while the Commission proceeds to hold hearings on the reasonableness of the rate change. § 152.

The Commission may prevent the proposed rate change from going into effect by suspension orders for 90 days and 6 months. § 153. The public utility may prevent the suspension from going into effect by providing financial protection to assure any refund to customers by filing a bond with surety with the Commission. While this may seem of little or no consequence to customers of public utilities whose liquidity is beyond question, apparently the legislative draftsman considered this to be of significance, and the importance of this in the case of public utilities whose financial structure is less sound is readily apparent. Obviously, the protection lies in the requirement that the bond be supported by a surety. In practice, this requirement is not adhered to in the case of utilities of sound financial position such as Water Company.

I do not find that the provisions of § 153 limit the jurisdiction of the Commission to declare reasonable rates for any period of time. Rather, they limit the duration of interference with the public utility's power to begin to collect this proposed new rate. However, they do not validate the rate under the requirement that a public utility's rates must always be reasonable.

1. The parties agree that this case is governed by the Chapter 1 of Title 26, Delaware Code, as it existed on the filing of this petition (March 15, 1974), and that the revised Chapter 1 which was adopted by 59 Del. Laws, Ch. 397, effective June 28, 1974, is inapplicable.

§ 155 which specifically refers to the action of the Commission with respect to a proposed rate change contains no time limitation and makes no reference to the limitations contained in § 153. It merely provides that the Commission "shall determine the just and reasonable rate to be charged or applied by the utility for the service in question and shall fix the same by order to be served upon the utility." It does provide that "such rate shall thereafter be observed until changed, as provided in this chapter." While this provision assures prospective application of the new rate, the absence of any reference to retroactive application gives rise to a possible inference that retroactive application was not contemplated and requires a testing of that proposition against other provisions of the chapter.

§ 154 contains an interesting provision that "if the public utility fails to make refund within 90 days after final determination by the Commission that the rate is excessive, any person entitled to such refund may sue therefor in any court of this State of competent jurisdiction . . .". Although it might be contended that this reference to refund was intended to coincide with the refund requirements of the bond filed under § 153, it should be noted that the action referred to in § 154 is not a suit upon the bond but simply a suit for the excess paid by the consumer over a reasonable rate fixed by the Commission. Because of the historic significance of a suit on a bond, it must be concluded that the reference to suit for the excess payment under § 154 was not intended merely to refer to suit on a bond filed under § 153.

This analysis must also consider the fundamental restraint upon public utilities forbidding a public utility to charge an unjust or unreasonable rate. 26 Del.C. § 161. Any departure from a rate previously found by the Commission to be just and reasonable is subject to hearing and determination of the Commission under § 152 and § 155.

It is my conclusion that the statute contemplates that for no period of time is a public utility entitled to be free from the restriction that its rate be fair and reasonable. In recognition of the financial burden that a public utility may suffer from a delay in collecting a rate change, both from the financial drain and also from the impracticality of collecting retroactively for meritorious rate increases, a public utility may increase its charge to its customers pending Commission hearing and final determination of the fair and reasonable rate. When the fair and reasonable rate for the period involved has been established by the Commission, the public utility no longer is entitled under the law to retain the excess of the rate charged over the fair and reasonable rate. Accordingly, a customer who has paid the excessive rate is entitled to resort to the judicial remedies contemplated by § 154. It should be noted that § 154 contemplates joinder of customers' claims. Water Company has cited various cases in support of the proposition that rates go into effect automatically at the expiration of the suspension period.[2] The statutes involved in these cases provided for an initial delay or suspension after filing for rate increases during which no increase would be in effect. After expiration of that period the public utility could automatically put the proposed rate into effect upon filing of an appropriate bond to cover refund. The rate increase under bond could then remain in effect until the decision of the Commission.

No authority has been cited holding that in the face of a provision such as 26 Del.C. § 161 proceeds of a rate increase put into effect by a public utility pending a Com-

2. *Arrow Transportation Co. v. Southern Railway Co.*, 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed. 2d 52 (1963) ; *Associated Press v. F.C.C.*, 145 U.S.App.D.C. 172, 448 F.2d 1095 (1971) ; *Associated Oil and Gas Co. v. F.P.C.*, 5 Cir., 280 F.2d 31 (1960) ; *Logan Gas Co. v. Public Utilities Commission of Ohio*, 115 Ohio St. 107, 152 N.E. 648 (1926).

mission hearing and decision may be retained without refund after the Commission determines that the rate is not just and reasonable.

 In the light of the conclusion just reached, the remaining issue is whether the Commission acted unreasonably in directing that the refund be made. Pursuant to the bond filed by the Water Company under § 153, the Commission was entitled to direct a refund of the excess charge for the period which the Commission could lawfully suspend the rate increase. I find no merit in Water Company's contention that the Commission's power to order a refund ceased to exist upon the expiration of the lawful suspension period under § 153. Under § 153 the Commission had the power to order a refund for the period of lawful suspension and the statute does not require that the refund power be exercised before the expiration of the lawful suspension period. Since the refund under § 153 would undoubtedly go to most of the same customers who would be entitled to bring legal action for refund for the period after the legal suspension of the rate increase, and since additional expense would undoubtedly be incurred in a bifurcated refund procedure, I conclude that the Commission reasonably exercised its broad powers in directing that refund of the excess rate for the entire period from the time the Water Company placed the rate increase in effect until the Commission's decision should be made by a direct refund by the Water Company.

In view of the conclusion reached above, it is not necessary to discuss the contention of the Commission and Intervenors that Water Company is estopped from opposing the refund order.

## II—APPLICABLE PRINCIPLES

 At the outset of the discussion of the propriety of the specific considerations which entered into the Commission's rate decision, it is appropriate to mention the standards which govern judicial review of a decision of the Commission. The ultimate object of a rate decision is to establish a result which will permit a utility "to earn enough to operate in a manner fair to it and to the consuming public." *Application of Wilmington Suburban Water Corporation*, Del.Supr., 211 A.2d 602, 605 (1964). Various elements must be considered in arriving at the fair rate. It is the function of the Court on appeal to determine whether the commission has reached a result which complies with the law and is reasonable, based upon the Commission's findings, and whether those findings are reasonable and are supported by the evidence before the Commission. *Application of Diamond State Telephone Company*, Del.Supr., 9 Terry 497, 48 Del. 497, 107 A. 2d 786 (1954). To enable this review, the statute charges that the Commission shall make findings in sufficient detail to enable the Court to make a proper review. 26 Del.C. § 183. When supplied with the proper findings by the Commission, this Court must determine whether sufficient substantial evidence supports those findings. *City of Milford v. Delaware Electric Cooperative, Inc.*, Del.Supr., 344 A.2d 384 (1974). With respect to elements which the Commission has discussed in its decision, insofar as they are raised on appeal, the Court must determine whether Commission's action is reasonable when considered in the light of the evidence before the Commission.

## III—FAIR VALUE

Water Company contends that the Commission used an improper "present fair value" in determining the just and reasonable rate. Water Company's evidence showed a trended original cost of $22,722,576. Absent contrary evidence, Water Company contends that this figure should have been accepted by the Commission as representing the present fair value. Instead, the Commission found the present fair value to be $17,800,000.

Water Company challenges the Commission's finding that the fair value of Water Company for purposes of rate fixing is $17,800,000, the contention being that the only evidence of value before the Commission was that based upon the Water Company's evidence of trended original cost, the assets were valued at $22,722,576. It criticizes the Commission's figure of $17,800,000 as being arbitrarily "pulled out of the hat." Actually, in its decision the Commission states that it has taken the $16,000,000 figure which was determined to be the fair value in the decision in the prior proceeding of Water Company before the Commission, and has added the cost of additional assets acquired since that proceeding.

▮ A prior decision by the Commission, made after full hearing, and not having been appealed, involving the same utility may be given consideration and weight by the Commission in a subsequent proceeding to the extent that it may be applicable to the factual situation existing at the time of the subsequent proceeding. It appears that the Commission's reference to the "last case" was directed to its decisions dated April 25, 1973 and August 15, 1973 in docket No. 660. The test year which served as the standard in fixing reasonable rates in those decisions ended June 30, 1971. In the present case the test year ended December 31, 1973, 2½ years later than the earlier test year. Where the Commission has made a prior finding of fair value with respect to the same public utility it may be given substantial weight in a subsequent rate proceeding but the Commission must consider any factors which require adjustment of the prior fair value, and must make such adjustment as those factors may reasonably justify, considering the elements referred to in 26 Del.C. § 126.[3] *Clark's Ferry Bridge Co. v. Public Service Commission,* 291 U.S. 227,

54 S.Ct. 427, 78 L.Ed. 767 (1934), affirming, 108 Pa.Super. 49, 165 A. 261 (1933); *Beaver Valley Water Co. v. Pennsylvania Public Utility Commission,* 140 Pa.Super. 297, 14 A.2d 205 (1940); *Mayor and City of Baltimore v. Consolidated Gas Electric Light & Power Co. of Baltimore,* Md.Pub. Serv.Comm., 61 PUR(NS) 94 (1945); *Memphis v. Southern Bell Telephone & Telegraph,* Tenn. RR and Pub. Utility Comm., 6 PUR(NS) 464. This is of particular significance in a period of substantial inflation, such as is involved here. The decision is lacking in this respect. The Commission must address itself to this subject and must make appropriate findings based upon the evidence. *Application of Delmarva Power & Light Co.,* Del. Super., 337 A.2d 517 (1975). This issue is remanded to the Commission for appropriate findings and for any further hearing appropriate for this purpose.

## IV—A. WORKING CAPITAL

▮ Water Company contends that it was entitled to an allowance of $247,107 for cash working capital. There is no doubt that under Delaware law a public utility is entitled to recognition and allowance for such cash working capital as is required to offset the time lag between the time when a utility must pay its expenses and the time it receives payment for its utility services. *Application of Wilmington Suburban Water Corporation,* Del. Supr., 203 A.2d 817 (1964). In recognition of this principle, the Commission allowed $140,000 for cash working capital.

▮ Water Company supports its contentions by the testimony of a witness who presented evidence concerning the cash working capital needs in the water service industry generally. Water Company's evidence did not address itself to the needs and requirements of this company. The

---

3. Upon remand of the rate issues in *Application of the Diamond State Telephone Co.,* Del. Supr., 10 Terry 203, 49 Del. 203, 113 A.2d 437 (1955), Commission applied this principle. *Application of the Diamond State Telephone Co.,* 10 PUR 3d 350.

needs of a company necessarily depend on the cash flow experience of a particular company, and its practices with respect to promptness or delay in payment of bills as well as its experience with respect to the promptness of collection of customers' billls are of significance. A witness for intervenors testified to tax overpayments and interest prepayments under the relationship existing between Water Company and its parent corporation indicating excess cash. The Commission arrived at the figure which it allowed by averaging the cash on hand at the end of 1972 and that at the end of 1973. While this is an imprecise method of arriving at cash working capital needs, faced with the alternative of a formula which did not reflect the experience of Water Company at all, it cannot be said the Commission failed to satisfy the requirements of the law in dealing with this matter. Nor was the Commission bound to accept the general statistical data presented by the Commission. In this respect the action of the Commission is affirmed.

## IV—B. INVENTORY

■ In arriving at the allowable working capital, the Commission disallowed three categories totalling $66,631. The major item ($56,196) is a category called "exempt," by which it is meant that these are items of small unit value for which an annual inventory is not made. The last inventory of items of this category was made several years ago and the total then was $56,196. The item has been carried on the books at this figure on the basis that the volume and value of these items remain relatively constant. Inventory is dispensed with because of the cost of making an inventory of the items. The figure has been accepted for Internal Revenue Service purposes and it had not been questioned or excluded by the Commission in Water Company's previous rate cases.

Recognizing that it was impossible in hearings in 1974 to establish an inventory of items as they existed during the 1973 test year, Water Company undertook to have a current inventory made in February, 1975. This was stricken as an item of evidentiary proof by the Commission. While it may not have been entitled to weight as independent proof of the value of this item, it clearly had evidentiary value if it tended to corroborate the testimony offered by Water Company that this item had remained relatively constant over a period of years.

■ I conclude that the Commission's action in rejecting any allowance for the so-called "exempt" items must be reversed on the ground that its action does not meet the statutory test. This matter is remanded to the Commission for further action consistent herewith.

## V—ACQUISITION ADJUSTMENT

■ Water Company claimed an acquisition adjustment of $98,148. This relates to Water Company's acquisition of Delaware Water Company in 1948. Until the 1973 application of Water Company before this Commission, Water Company had carried the Delaware Water Company on its books at the price originally paid when Water Company acquired that company. In the 1973 proceeding and in this proceeding Water Company sought to adjust that price upward to the depreciated original cost to Delaware Water Company which was $98,148 higher than the price paid by Water Company. The Commission concluded that this was an item which should have been amortized within a relatively short period after the 1948 acquisition, and in its 1973 decision it disallowed this adjustment entirely. In its present decision it concluded that this adjustment was entitled to treatment on the books of the company and that it should be amortized over a three-year period. Accordingly, it included one-third ($32,716) of the adjustment in the rate base for the test year and deducted the same amount from allowable expense for the base year.

It appears to be without dispute that under proper accounting practices this is an item which ought to be amortized. The point of difference is that Water Company contends that the amortization ought to be over a long period of time and that since it failed to make such amortization beginning in 1949, the long-term amortization should commence now. Intervenors contend that since Water Company has not provided for the amortization of this figure during the proper time and since it has never prior to 1973 contended that the adjustment should be made a part of the rate base, there should be no adjustment or amortization allowance. Under the circumstances here, the Commission's action in permitting an amortization over a short period of time commencing at this late date was a reasonable solution to Water Company's dilemma and the Commission's determination in this respect is warranted under the law. The Commission's action in this respect is affirmed.

## VI—A. POST TEST YEAR ADJUSTMENT

 Having arrived at the revenue and expenses of Water Company for the test year (1973), the Commission made an upward adjustment of revenues to reflect the increase in the number of customers to September 30, 1974. The only adjustment which it made to expenses was an allowance of $2,076 as an allowance for increased cost of billing the new customers. Its conclusion that no other additional expenses would be incurred was based on an assertion by applicant that its consumption of electricity and chemicals had been reduced in 1974 as had been the total number of employees and the labor cost per gallon. It appears that the Commission was giving a significance to certain statements of Water Company which was not intended and was not supported by the figures. Findings of the Commission must be based on evidence which generally is found in the books and records and financial statements of the utility. It appears that the record

contained insufficient financial data to permit a finding to be made as to the expense picture attributable to the revenue received from the new customers.

 The test year which is set in the discretion of the Commission is of primary significance in rate fixing. However, when complete and accurate information becomes available with respect to a later period of time, it is appropriate to consider that information "as a check on the continuing validity of the test year experience in a period of rapid change like the present." *Application of Delmarva Power and Light Company,* supra. In the last cited case, utility's figures for the subsequent year became available and were introduced in evidence prior to the Commission's decision. Under that state of facts, this Court held that the Commission should have considered the figures for the subsequent year, at least for the purpose quoted above.

 Here, it appears that the Commission did not use the 1974 nine month figures to test the validity of the 1973 test year figures. Rather, it modified the test year figures to create a hybrid figure. Moreover, it has been discussed above that the 1974 nine month figure did not reflect any evidentiary finding based on evidence in the case concerning the added expenses. Accordingly, this matter is remanded to the Commission for appropriate action consistent herewith.

## VI—B. 1. PARENT COMPANY MANAGEMENT AND SERVICE CHARGES

 Water Company sought an allowance for $178,265 which it paid to a subsidiary of Water Company's parent company for various services. This payment was based upon a formula which, according to Water Company, has acceptance in the industry. In its decision of August 15, 1973 in a prior proceeding involving Water Company, the Commission put Water Company on notice that it would not allow

management fee thereafter unless the records were produced showing that the fee reflected time actually spent on behalf of Water Company. Since the prior decision of the Commission was rendered after the major part of the 1973 test year had passed, Water Company is not in a position in this proceeding to provide the actual time records. In the 1973 decision (involving a test year ending June 30, 1971) the Commission allowed a management fee of $3.50 per customer. Here, the fee sought by Water Company amounted to $8.73 per customer. The Commission, considering the effect of inflation, increased the allowance from $3.50 per customer to $5.00 per customer and applied that to the customers as of September 30, 1974—a total allowance of $103,710.

To require the Commission to accept Water Company's formula figures or the formula figure of a Commission's staff would violate the Commission's discretionary finding that a formula is not the proper method of determining the reasonableness of charges made by the parent company or another of its subsidiaries. The allowance by the Commission in its decision of August 15, 1973 stands unchallenged. The inflationary adjustment made by the Commission is reasonable and proper under the evidence before the Commission. I conclude the Commission's allowance is reasonable and is affirmed.

## VI—B. 2. RATE HEARING EXPENSES

Water Company objects to the disallowance of a portion of its expenditures in connection with this rate proceeding before the Commission. Water Company showed expenditure of $192,802. The Commission disallowed a total of $35,000, comprising legal expenses of $15,000, other expenses of $15,000 and expenses in the amount of $5,000 related to an employee of General Water Works who had left its employment and was not available to present evidence at the hearing.

The question is whether the expenses in connection with the rate proceeding were reasonable and proper. With the exception of the $5,000 disallowance for services of the former employee of General Water Works, the Commission's decision gives no finding or explanation for the disallowance. With respect to that employee, the Commission's explanation that it disallowed $5,000 of the claimed $8,206 on the ground that he was not available to testify and that his work papers could not be located by Water Company reasonably supports the action of the Commission in that respect. The contention made in the Commission's brief in this Court that the disallowance may have related to the companion claim of Water Company for an automatic rate adjustment is not supported by any language in the Commission's decision. The Commission's disallowance of the remaining $30,000 claim must be reversed and the matter is remanded to the Commission to include that amount in its allowance.

## VI—B. 3. REFUND EXPENSES

The Commission disallowed Water Company's claim of $27,505 as expense incurred in making the refund required under the 1973 rate decision of the Commission. In that proceeding, as in this, Water Company had sought a larger rate increase than it received. However, the Commission did allow a rate increase to Water Company. The statute does contemplate that there will from time to time be proceedings to change the public utility rates and it does permit the public utility to put into effect increased rates pending the hearings before the Commission and that there would be a refund of any excess charges over the rate ultimately set by the Commission. Clearly, this procedure contemplates expenses. This is a price for the opportunity for a full hearing and due deliberation by the Commission. Where it is ultimately determined that a public utility was entitled to an increase as of the time the tentative rates were put into effect by the public utility, it should not be required

at its peril to guess the exact amount of increase which the Commission may ultimately allow. This proceeding indicates the complexity of the rate making process and the many factors which enter into it.

I conclude that the Water Company is entitled to its reasonable expense in making the refund. The Commission has not addressed itself to the issue of reasonableness nor has it given consideration to the fact that this item of expense, like the item of expense discussed in the previous section of this Opinion, is a non-recurrent expense and that it may not be proper for the entire expense to be charged against a single income year. This matter is remanded to the Commission for action consistent herewith.

## VII—AUTOMATIC RATE ADJUSTMENT

 Finally, the Water Company sought and the Commission refused a modification of Water Company's rate schedule which would have permitted Water Company to put into effect without further action of the Commission rate adjustments reflecting fluctuations in various operating expenses.

The basic concept of Commission authorization for automatic rate adjustments based on a particular factor of expense of the public utility appears to have been accepted for many years as a valid application of the Delaware Public Utility Law. The most notable application of this concept has been in the case of *Delmarva Power and Light Company* where a formula has been approved based upon fuel cost. In approaching this question, it must be borne in mind that automatic rate adjustments constitute an exception to the traditional rate making function of public utility commissions. The question therefore is whether Water Company has made out a valid basis for such an exception and whether the Commission having granted such an exception in certain instances act-

ed reasonably in refusing the exception in the case of Water Company.

In the case of *Delmarva Power and Light Company's* gas rate, cost of gas represented 61% of the operating expense of that operation and in the case of electric power, fuel cost represented 50% of the expense of that operation. In each instance it represented a single item which was purchased by the utility and did not carry the potential of economy through efficient management. In the case of Water Company, six items were included as the determinants for rate adjustment and the largest single item was "payroll expense." This item clearly is an item of management control and is a proper subject for Commission surveillance.

While the total of the items included in Water Company's proposal represents 51% of Water Company expenses, no single item represents more than 18% of the expenses and that is payroll expense, which may be influenced substantially by management controls.

The Commission was persuaded from the evidence which it had heard in the electric and gas rate cases that the automatic rate adjustment involved there would maintain that public utility in a proper competitive position for new capital and that this would result in lower capital costs which could benefit the public. It found that in general, public utilities of that type had been authorized to have an automatic rate adjustment. Therefore, it found, allowing such adjustment in this State would maintain that public utility in the proper relationship to similar public utilities in other states over the country. In contrast, the Commission found here that there was insufficient evidence to show that in the case of water companies any measurable reduction in capital costs resulted from an automatic rate adjustment authorization.

I conclude that the Commission's decision and findings with respect to the proposed rate adjustment clause are supported

by the record and that valid distinctions have been shown between the treatment of gas and fuel costs related to gas and electric utilities and the proposed rate adjustment clause which was rejected by the Commission in this case. Clearly, an automatic rate adjustment may result in successive Commission hearings and costs increase. However, considerations of the protection of the public and the providing of utility services at fair prices must govern the decisions of the Commission. Periodic scrutiny by the Commission is consistent with such protection. Finally, with respect to the immediacy of a need for a rate change, it cannot be overlooked that the public utility may put into effect its proposed rate increase after minimal notification and after compliance with the statutory provision and may retain that rate increase to the extent that the increase is determined to have been reasonable.

The Commission's disallowance of the Water Company's requested automatic rate adjustment provision in its rate schedule is a reasonable application of the law and is supported by substantial evidence and is affirmed.

## VIII—SUMMARY

In summary, this case is remanded to the Commission for action consistent herewith, namely, to make appropriate findings relating to the issues discussed in Sections III, IVB, VIA, VIB2, and VIB3, and to hold further hearings thereon if it determines such hearings to be appropriate, and in the light of the findings contemplated herein together with the findings heretofore made which are affirmed herein or which have not been challenged on appeal, the Commission shall determine the just and reasonable rate. In all other respects, the decision of the Commission is affirmed.

IT IS SO ORDERED.